IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 08–cv–02228–MSK–KMT

MICHELLE FELIX,

    Plaintiff,

v.

CITY AND COUNTY OF DENVER,

    Defendant.

---

**ORDER**

---

This matter is before the court on "Opposed: Plaintiff's Motion to Compel" ("Mot.") [Doc. No. 78, filed September 18, 2009]. Defendant filed a Response ("Resp.") [Doc. No. 84] on September 30, 2009 and Plaintiff filed her Reply [Doc. No. 94] on October 13, 2009. The matter came on for hearing on November 5, 2009 and was taken under advisement.

Plaintiff seeks the production of Defendant's witness and exhibit lists, which were properly opposed prior to the drafting and presentation of a proposed Final Pretrial Order. Those requests are **denied** as premature. Plaintiff also requests that Defendant set forth "the arguments that he will use to counter the Plaintiff's seven claims." This blockbuster type interrogatory is overbroad and is also **denied**.

Additionally, Plaintiff seeks documents from certain individual files of eight clients of the Adult Protection Division of the Department of Social Services for the City and County of Denver (hereinafter the "City"). The Plaintiff asserts she was the assigned caseworker for these clients prior to her separation from employment at the City. Plaintiff claims her supervisor placed negative comments in her annual evaluation and accused the Plaintiff of insubordination because Plaintiff either refused to follow the supervisor's explicit directions with respect to actions taken during management of these clients' cases or, when Plaintiff did follow the supervisor's directives, she did so under considerable protest. (*Id.* at ¶¶ 9, 11.) Plaintiff asserts the incidents incurring the negative attention from the supervisor referenced the particular clients by name.

Plaintiff argues the documentation in the particular client case files will show that the supervisor's directives concerning the management of the cases were without precedent and, in Plaintiff's view, detrimental to the clients' interests. (Mot. ¶ 7.) Plaintiff asserts the documents in the files are evidence that she was managing her cases appropriately and conscientiously. Additionally, Plaintiff requests production of the files to show that she had handled similar situations in the past by a given protocol and, therefore, the supervisor's directives to her were unjustifiable based upon past experience. (*Id.* at ¶¶ 10.) Plaintiff claims the file documentation will show that Plaintiff was correct about how to handle the events described in the evaluation, and, therefore, her supervisor's negative comments were unwarranted and motivated by discriminatory animus. Additionally, the Plaintiff claims that "both the written reprimand and the negative comments made in the yearly evaluation were acts of retaliation against her for

2

filing racial discrimination complaints . . . ." and done to harass her without basis. (*Id.*; Reply at ¶ 6.) Plaintiff claims the information from the files will support her burden of proof on the issue of pretext with respect to adverse employment actions allegedly taken against her by the City.

Plaintiff apparently hopes to prove by the documentation that she was justified in opposing the explicit directions of her supervisor. She claims that the contents of the files will help her "show that it was part of her job as a government worker to protect clients and she had the authority to go to a client's home and call 911 if necessary [contrary to the directive of the supervisor with respect to one of the clients] as she had done several times before." (Reply at ¶ 9.] Plaintiff concludes, "[t]he Plaintiff needs a copy of their files to show that she was not insubordinate and inappropriate."

The Defendant argues that the files of Adult Protection clients are highly confidential pursuant to Colo. Rev. Stat. §§ 26-3.1-102(7)(a) and (b), 26-3.1-204(7)(a) and (b) and 26-3.1-114. Defendant also argues the information sought is not relevant in this case because the information in the files attempts only to counter a 'negative'[1] evaluation. Since such evaluation did not affect the Plaintiff's pay, benefits or status, Defendant argues the evaluation itself does not constitute an adverse employment action pursuant to *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1224 (10th Cir. 2006) and its progeny. (Resp. at 3.) Defendant claims that Plaintiff's separation from employment came about as a result of Plaintiff's assertion that she was medically unable to return to work if it meant working for her particular supervisor and

---

[1] Defendant points out that Plaintiff actually received a "successful" evaluation, in spite of several negative comments.

eventually Plaintiff therefore became medically disqualified for her position.  Defendant asserts that Plaintiff's performance on the job, including even the claim of insubordination, were not the reasons or grounds for Plaintiff's separation from employment.

### *ANALYSIS*

In Title VII cases, the relevant starting inquiry is whether defendant intentionally discriminated against Plaintiff based on protected class characteristics.  *Jones v. Denver Post Corp.,* 203 F.3d 748, 752 (10th Cir. 2000).  If a plaintiff offers no direct evidence of discrimination, her claims must be analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Young v. Dillon Cos., Inc.*, 468 F.3d 1243, 1249 (10th Cir. 2006).  Under *McDonnell Douglas*, the plaintiff bears the burden of establishing a *prima facie* case of racial or gender discrimination based on indirect or circumstantial evidence.  *Young* at 1249.

Under that analysis, the "not onerous" burden of establishing a *prima facie* case is placed upon the plaintiff who must show by a preponderance of the evidence, that: (1) she belongs to a protected class;  (2) she was qualified for her position; (3) she suffered an adverse employment action; and (3) the adverse employment action occurred under circumstances giving rise to an inference of discrimination.  *Somoza v. University of Denver*, 2006 WL 2535092 (D. Colo. 2006).

If the plaintiff can satisfy this threshold requirement, the burden shifts to the employer "to rebut the presumption of discrimination by producing evidence the termination was based on a legitimate, nondiscriminatory reason.  'The explanation provided must be legally sufficient to justify a judgment for the defendant . . . to frame the factual issue with sufficient clarity so that

the plaintiff will have a full and fair opportunity to demonstrate pretext.'" *McCowan v. All Star Maintenance, Inc.*, 273 F.3d 917, 922 (10th Cir. 2001) (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). See *EEOC v. Flasher Co.*, 986 F.2d 1312, 1316 (10th Cir. 1992) (citations omitted).

Thereafter, if the employer meets its burden, the burden shifts back to the plaintiff to demonstrate that the defendant's proffered justification is pretextual. *Id.* This burden-shifting analysis applies both to Title VII and § 1981 claims. *See Perry v. Woodward*, 199 F.3d 1126, 1135 (10th Cir. 1999). The plaintiff must demonstrate that "the proffered reason [for the adverse employment action] is not the true reason either directly by showing a discriminatory reason more likely motivated the employer or indirectly by challenging the employer's reason as unworthy of credence." *McCowan*, 273 F.3d at 922 (citing *Burdine*, 450 U.S. at 256).

There are typically three ways that a plaintiff makes a showing of pretext: (1) with evidence that the defendant's stated reason for the adverse employment action was false; (2) with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances; or (3) with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff. *Kendrick v. Penske Transp. Servs, Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000). It is to this prong of the analysis that Plaintiff directs her request for the content of the Adult Protection client files.[2]

---

[2] At the November 5, 2009 hearing Plaintiff stated she needed the information to show "pretense" and that the Defendant's criticism of her work was "just a pretense."

"[A] challenge of pretext, however, requires a court to look at the facts as they appear to the person making the decision to terminate, not the aggrieved employee." *Piercy v. Maketa*, 480 F.3d 1192, 1200 (10th Cir. 2007) (quoting *Green v. New Mexico*, 420 F.3d 1189, 1191 n. 2 (10th Cir. 2005); *Kendrick v. Penske Transp. Servs.*, 220 F.3d 1220, 1231 (10th Cir. 2000). "The relevant inquiry is not whether [its] proffered reasons were wise, fair or correct, but rather we ask whether [it] believed those reasons to be true and acted in good faith upon those beliefs." *Rivera v. City and County of Denver*, 365 F.3d 912, 924-25 (10th Cir. 2004).  Even a mistaken belief can be a legitimate, non-pretextual reason for an employment decision.  *EEOC v. Flasher Co.*, 986 F.2d 1312, 1322 n. 12 (10th Cir.1992).  Accordingly, a company's good faith "perception of the employee's performance . . . is relevant, not plaintiff's subjective evaluation of [her] own relative performance." *Piercy* at 1201.  What Plaintiff misses in her argument is that the focus of the inquiry – to the extent inquiry is relevant at all given that her evaluation was undisputedly characterized as "successful" –  is on whether defendant legitimately believed plaintiff was not following the orders and directives of her supervisor and not acting in a cooperative manner, not on whether Plaintiff believed she was justified in her critique of the supervisor's dictates.  *See  Timmerman v. U.S. Bank,* 2006 WL 894894, *4 (D. Colo. 2006) *aff'd*. 483 F.3d 1106 (10th Cir. 2007); *Robleado v. Deffenbaugh Industries, Inc.*, 136 F. Supp. 2d 1179, 1192 (D. Kan. 2001) (so long as employer in good faith believed employee violated work rule, fact that employee did not in fact violate rule is immaterial), *aff'd*. 33 Fed. Appx. 480 (10th Cir. 2002).

Plaintiff wishes to show by reference to the client files first that she, not her supervisor, was unerring in handling the situations presented, second, that she was justified in resisting the mandates of her supervisor, and third, that she did not deserve to have negative comments concerning her decisions with respect to treatment of those particular clients placed in her evaluation.

One primary flaw with this line of reasoning is that a successful evaluation is not an adverse employment action even when the evaluation contains comments concerning areas of deficiency. Judge Krieger has recently opined

> The Tenth Circuit liberally defines the term "adverse employment action." *See Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1264 (10th Cir.1998). However, not every unpleasant employment experience arises to the level of an adverse employment action. As the Tenth Circuit has repeatedly observed, Title VII does not prescribe a workplace civility code . . . . Generally, to qualify as an adverse employment action, "the action must amount to 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or ... causing a significant change in benefits.' " *Stover v. Martinez*, 382 F.3d 1064, 1071 (10th Cir.2004) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

*Johnson v. City and County of Denver*, 2008 WL 3914000, *7 (D. Colo. 2008). In this case, the Plaintiff received a successful evaluation with only a few instances of unsatisfactory performance noted. She was not fired, demoted or re-assigned duties and neither her pay nor benefits were affected by the few negative observations in the evaluation.

Plaintiff was not discharged because of her performance as a caseworker or the decisions she made with respect to care of her clients; nor was she discharged because the City claimed that she was insubordinate. Defendants allege as their showing subsequent to Plaintiff's

presentation of a prima facie case, that Plaintiff was disqualified from her position because she refused to come to work if she was to be required to work for the same supervisor. Case law is clear that a supervisor's guidance or actions might be judged incorrect, flawed or even intemperate and unfair, but such considerations are not within the purview of Title VII. *See Timmerman*, 483 F.3d at 1120 (Title VII does not prohibit "an employer from making hasty decisions that appear harsh; what [it] forbid[s] are decisions made with discriminatory animus.") (citing *E.E.O.C. v. Flasher Co.*, 986 F.2d 1312, 1321 (10th Cir.1992).

The contents of the client files, at best, might support Plaintiff's contention that she was better equipped than her supervisor to correctly handle situations with respect to Adult Protective Service clients. However, this is not a case for wrongful failure to promote based on discrimination. Whether Plaintiff was correct about the handling of a given situation arising while discharging her duties as a caseworker or whether her supervisor was in the right to insist that she take a different approach is irrelevant to the issues. Likewise, documentary evidence aimed at supporting the righteousness of Plaintiff's handling of a client's unique problem, even when her supervisor disapproved of the actions taken, is also irrelevant, especially in light of Plaintiff's positive evaluation.

Again, Plaintiff suffered no adverse employment action because of her handling of clients as a caseworker. Therefore, any evidence of this kind would be inadmissible at trial. Mindful of Fed. R. Civ. P. 26's admonition that discoverable information must at least be "reasonably calculated to lead to the discovery of admissible evidence," this court concludes that information

contained in the client files would not lead to the discovery of admissible evidence and production of this documentation is not required.

It is therefore **ORDERED**

"Opposed: Plaintiff's Motion to Compel" [Doc. No. 78] is **DENIED**.

Dated this 13th day of November, 2009.

**BY THE COURT:**

Kathleen M. Tafoya
United States Magistrate Judge